AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
JENNIEFER SHORT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JENNIEFER SHORT <br><br> Plaintiff, <br><br> v. <br><br><br> S&S BASELINE, INC., <br><br> Defendant. | **CASE NO. 5:24-cv-02189** <br> <u>Civil Rights</u> <br><br> **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:** <br><br> 1. **Violations of Americans with Disabilities Act of 1990 Regarding Service Dogs (42 U.S.C. § 12101 *et seq.*)** <br><br> 2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52) Regarding Service Dogs** <br><br> 3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*) Regarding Service Dogs** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

1.   **PREFETORY STATEMENT:** This is Plaintiff's second Americans with Disabilities Act ("ADA") lawsuit ever. It does not involve any architectural barriers, only service dog denial claims. Plaintiff's law firm is not a high frequency litigation firm, filing approximately 11 cases this year to date in this District. Rein & Clefton represents many different disabled plaintiffs throughout the state, none of

whom are high frequency litigants as defined by state law. Plaintiff JENNIEFER

SHORT complains of Defendant S&S BASELINE, INC., and alleges as follows:

2. **INTRODUCTION:**   On September 18, 2024, Plaintiff and her

boyfriend Casey were in San Bernardino, California so that Casey could donate

plasma at a clinic there. On their way home, Plaintiff and Casey went the 76 Gas

Station located at 799 W. Base Line Street, San Bernardino, California 92410 to

purchase gas.  Plaintiff, who is disabled, went inside the convenience store with her

task trained service dog, Zoey, to use the restroom and possibly purchase a snack.

Upon her entering the store, Defendant's employee immediately told Plaintiff that

pets were not allowed inside the store.  When Plaintiff tried to inform Defendant's

employee that her dog is a service dog, not a pet, he refused to listen to her.

Defendant's employee continually refused to acknowledge that Plaintiff's dog is a

service dog and ultimately forced her to leave the store without using the restroom

or making any purchases.

3.     Defendant refused to serve Plaintiff because of the presence of her

service dog. Plaintiff was denied service by Defendant because she needs her

service dog to equally enjoy the premises compared with non-disabled persons.

Plaintiff was devastated and humiliated by her interactions with Defendant.

4.     Defendant's decision to bar Plaintiff from even entering the store

because of her service dog contravenes the ADA's mandate to allow disabled

persons equal enjoyment of the facility and the Department of Justice's technical

assistance and guidance on the subject of "Service Animals."  In relevant part, the

guidance states:

- A person with a disability cannot be asked to remove his service

  animal from the premises unless: (1) the dog is out of control and the

  handler does not take effective action to control it or (2) the dog is not

  housebroken. When there is a legitimate reason to ask that a service

  animal be removed, staff must offer the person with the disability the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

opportunity to obtain goods or services without the animal's presence**.** DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

5.      Defendant refusal to allow Plaintiff to enter its store to use the restroom and make purchase due to the presence of her task trained service dog occurred on September 18, 2024. It occurred despite the fact that her service dog was under her control, task trained, and is housebroken.  Further, Defendant did not cite either of those as reasons for refusing service to Plaintiff.  Defendant simply told Plaintiff to leave because it does not allow dogs, even service dogs, on the premises.

6.      Plaintiff is often in the area near the gas station/convenient store.  She donates plasma and visits her boyfriend's family in San Bernardino regularly. The gas station/convenient store is conveniently located for her purchase gas and snacks when she does either of those activities.  Plaintiff intends to return and make purchases at the gas station/convenient store.  However, she cannot do so until the policies of the public accommodation are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing to serve her because she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the 76 Gas Station and Food Mart convenience store.

7.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

8.      **VENUE:**  Venue is proper in this court pursuant to 28 USC

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1    section 1391(b) and is proper because the real property which is the subject of this

2    action is located in this district and that Plaintiff's causes of action arose in this

3    district.

4         9.     **INTRADISTRICT:** This case should be assigned to Eastern Division

5    as the real property which is the subject of this action is located in this intradistrict

6    and Plaintiff's causes of action arose in this intradistrict.

7         10.    **PARTIES:** Plaintiff Jenniefer is a "qualified" physically disabled

8    person. She suffers from panic attacks and anxiety disorder. Plaintiff's disabilities

9    limits her ability to go out in public and interact with people, especially unfamiliar

10   people. When she experiences a panic attack, Plaintiff cannot function at all until

11   she gets to a safe place and can calm down. Plaintiff relies upon and has trained her

12   service dog, a lab mix named "Zoey," to assist her with certain tasks, including

13   alerting her to the onset of panic attacks. Zoey is trained to notify Plaintiff when

14   she is about to experience a panic attack by pawing, nosing, and licking Plaintiff

15   until she turns her attention to Zoey. Once she turns her attention to Zoey, Plaintiff

16   can work on calming herself down and removing herself from any triggering

17   situations. Zoey has been both individually trained by Plaintiff and professionally

18   trained as a service dog. Plaintiff reinforces that training daily. Zoey wears a tag

19   that clearly identifies her as a service dog. Plaintiff is a qualified person with a

20   disability as defined under federal and state law. 42 U.S.C. § 12102, 29 U.S.C.

21   § 705(9)(B), and California Government Code § 12926(1).

22        11.    Defendant S&S BASELINE, INC., is and was at all times relevant to

23   this Complaint the owner, operator, lessor and/or lessee of the subject business

24   known as the 76 Gas Station and Food Mart located at 799 W. Base Line Street,

25   San Bernardino, California.

26        12.    The 76 Gas Station and Food Mart is a place of "public

27   accommodation" and a "business establishment" subject to the requirements *inter*

28   *alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with

Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

13. **FACTUAL STATEMENT:** Plaintiff has been working with her service dog Zoey for the last six years. Zoey is a lab mix who was individually trained to be a service dog by Plaintiff with the guidance of a professional trainer. Plaintiff continues to train Zoey to serve her specific needs throughout their relationship. Zoey is specifically trained to notify Plaintiff when she is about to experience a panic attack by pawing, nosing, and licking Plaintiff until she turns her attention.

14. Zoey is a working dog; she is not a pet. Plaintiff and Zoey have trained extensively together, and they supplement that training daily. Plaintiff takes Zoey everywhere with her in public. It is important they stay together at all times because (a) Zoey provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Zoey goes.

15. It is self-evident to any reasonable person that Zoey is a service dog and should be allowed to accompany Plaintiff wherever she goes based on her identifying vest and calm, well-trained disposition.

16. On September 18, 2024, Plaintiff and her boyfriend Casey were in San Bernardino, California so that Casey could donate plasma at a clinic there. Both Plaintiff and Casey donate plasma to the clinic in San Bernadino on a regular basis, and therefor are in the area often. After Casey had finished at the clinic, the couple stopped at the 76 Gas Station and Food Mart convenience store operated by Defendant to fill their vehicle with gas.

17. They parked their vehicle at pump 10 at the 76 Gas Station, and then Casey went inside the convenience store to pay cash for the gas. Plaintiff followed Casey into the convenience store a few moments later intending to use the restroom and possibly purchase a snack or drink. As is her usual custom, Plaintiff was

1    accompanied by her service dog Zoey when she entered the convenience store.

2    Zoey was wearing a vest identifying her as a service dog, and she was on a leash

3    and under Plaintiff's control at all times.

4        18.    Plaintiff and Zoey walked in the entrance door of the convenience

5    store just as Casey was approaching cashier to pay for gas.  He witnessed Plaintiff's

6    interactions with Defendant's employee.  Plaintiff and Zoey entered the

7    convenience store and approached the cashier to inquire about using the restroom,

8    Defendant's employee immediately told Plaintiff that pets were not allowed inside

9    the store.  Plaintiff explained that Zoey is her service dog and therefore allowed to

10   accompany her wherever the public is allowed inside the store.

11       19.    Defendant's employee told Plaintiff that his manager said no pets were

12   allowed inside the convenience store.  Again, Plaintiff explained that Zoey is not a

13   pet, she is a service dog.  Defendant's employee said he did not care whether the

14   dog was a service dog, the dog was not allowed inside the store.  Defendant's

15   employee then turned to Casey and gestured for him to pay.  Casey said "$60 on

16   pump 10," and then he left the store.

17       20.    Plaintiff stayed inside the store and again explained to Defendant's

18   employee that Zoey is a service dog, not a pet.  Then Defendant's employee told

19   Plaintiff to either tie her dog up outside or leave.  When Plaintiff hesitate,

20   Defendant's employee came out from behind the cashier counter and came towards

21   her.  Plaintiff was afraid of what Defendant's employee might do if he reached her,

22   so she turned around and left immediately.

23       21.    Plaintiff felt threatened and humiliated by her interactions with

24   Defendant's employee, and she could not understand why Defendant and its

25   employees could not understand the distinction between a service dog and a pet.

26   She returned to her vehicle, and when Casey was finished pumping their gas, they

27   left immediately.

28       22.    Plaintiff would like to return to the gas station and convenience store

because it is a convenient place to stop for gas and snacks when she or Casey are donating plasma or visiting Casey's family who lives less than a five-minute drive away.  However, Plaintiff can only feel comfortable returning to receive care *after* Defendant has implemented proper service animal policies and training of its staff.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

23.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 22, above, and incorporates them herein by reference as if separately repled hereafter.

24.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

25.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

26.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

7

27.    The 76 Gas Station and Food Mart is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(E).

28.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

29.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service-animals-2010.htm. Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

30.    Defendant has a policy and practice of denying and restricting access to patrons with service animals. This is evident from the owner and employees' behaviors as described above. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

31.   DOJ 2010 "Service Animal" guidance available at

https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis

added).

32.   On information and belief, as of the date of Plaintiff's most recent visit

to the 76 Gas Station and Food Mart convenience store on or about September 18,

2024, Defendant continues to deny full and equal access to Plaintiff and to

discriminate against Plaintiff on the basis of her disabilities, thus wrongfully

denying to Plaintiff the full and equal enjoyment of the goods, services, facilities,

privileges, advantages and accommodations of Defendant's premises, in violation

of the ADA.

33.   In passing the Americans with Disabilities Act of 1990 (hereinafter

"ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

34.   As part of the ADA, Congress passed "Title III - Public

Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et

seq.*).  The subject property and facility is one of the "private entities" which are

considered "public accommodations" for purposes of this title, which includes but

is not limited to any "sales or rental establishment." 42 USC § 12181(7)(E).

35.   The ADA states that "No individual shall be discriminated against on

the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

36.    The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

37.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

38.    On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

39.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the 76 Gas Station and Food Mart convenience store and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

40.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in

section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is

being subjected to discrimination on the basis of her disabilities in violation of

sections 12182 and 12183 of this title.  On information and belief, Defendant has

continued to violate the law and deny the rights of Plaintiff and other disabled

persons to "full and equal" access to this public accommodation since on or before

Plaintiff's encounters.  Pursuant to section 12188(a)(2).

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

41.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of

the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal

Regulations adopted to implement the Americans with Disabilities Act of 1990.

Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA

who is being subjected to discrimination on the basis of disability in violation of

Title III and who has reasonable grounds for believing she will be subjected to such

discrimination each time that she may use the property and premises, or attempt to

patronize the 76 Gas Station and Food Mart convenience store, in light of

Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH**
**ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS**
**WITH DISABILITIES ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

42.     Plaintiff re-pleads and incorporates by reference, as if fully set forth

again herein, the allegations contained in Paragraphs 1 through 41 of this

Complaint and incorporates them herein as if separately re-pleaded.

43.     At all times relevant to this action, the Unruh Civil Rights Act,

California Civil Code § 51(b), provided that:

12

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

44.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

45.    The 76 Gas Station and Food Mart convenience store is a business establishment within the meaning of the Unruh Act.  Defendant is the owner and operator of the business establishment.

46.    Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

47.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

48.    The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are

responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

49.     Defendant's behavior was intentional: Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this Complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

50.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

51.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES**
**IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

52.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 51 of this

Complaint as plead infra, incorporates them herein as if separately re-pleaded.

53.    Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

54.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

55.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

56.    Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

57.    Defendant is also in violation of California Penal Code section 365.5(b) which states:

No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public

15

accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

58.     The 76 Gas Station and Food Mart convenience store is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

59.     Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal prohibition of her legally protected use of her service dog.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to return to the 76 Gas Station and Food Mart convenience store until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since September 18, 2024, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

60.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, including disabled individuals who require the assistance of service animals, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

61.    Plaintiff wishes to return to the 76 Gas Station and Food Mart convenience store but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to the 76 Gas Station and Food Mart convenience store and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled persons and disabled individuals who require the assistance of a service animal.

62.    The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.  As to the Defendant that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

63.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

64.    **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning,

operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, and treble damages, as hereinafter stated. Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize the 76 Gas Station and Food Mart convenience store and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

65. Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168, 177 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

66. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all

reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Jenniefer Short prays for judgment and the following specific relief against Defendant:

1.    An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

   a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b.  To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and patronize the 76 Gas Station and Food Mart convenience store;

   c.  That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or

their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

//

Date: October 15, 2024                    REIN & CLEFTON

                                          _____*/s/ Aaron M. Clefton*
                                          By AARON M. CLEFTON, Esq.
                                          Attorneys for Plaintiff
                                          JENNIEFER SHORT

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: October 15, 2024                    REIN & CLEFTON

                                          _____*/s/ Aaron M. Clefton*
                                          By AARON M. CLEFTON, Esq.
                                          Attorneys for Plaintiff
                                          JENNIEFER SHORT

21